The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Bost. As the appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, the Full Commission hereby adopts the Opinion and Award of the Deputy Commissioner.
***********
The parties at hearing before the Deputy Commissioner and in a Pre-Trial Agreement submitted prior to the hearing have entered the following:
 STIPULATIONS
1. At the time of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Worker's Compensation Act.
2. At the time of the injury giving rise to this claim, an employment relationship existed between plaintiff and defendant.
3. At the time of the injury giving rise to this claim, defendant was self-insured.
4. At the time of the injury giving rise to this claim, plaintiff's average weekly wage was $255.44.
5. Plaintiff's medical records were stipulated into evidence.
***********
Based upon all of the competent evidence of record, the Full Commission make the following:
 FINDINGS OF FACT
1. In September 1994, plaintiff was hired to work as a temporary laborer by defendant where she worked in that capacity until 5 December 1994.
2. While working as a laborer, plaintiff was in training. She observed, ran errands such as retrieving tools from the truck, and generally learned the job.
3. On 5 December 1994, in her position as a temporary employee, plaintiff was transferred into the meter reading department.
4. From 5 December 1994 until 9 January 1995, plaintiff worked with another employee learning the position. Plaintiff did not have her own route and was not assigned any meters to read.
5. Most of plaintiff's day was spent observing while she learned how to find, open and read meters and use the processor to enter the data obtained from the meters.
6. From 9 January 1995 until 1 February 1995, plaintiff was still in training and had her own route. Because she was still learning the job, plaintiff was assigned a smaller number of meters to read. As shown in defendants' Exhibit #4, plaintiff read meters for twelve days.
7. On 2 February 1995, plaintiff reported that she had injured her right arm/hand and was sent to Prime Care.
8. Subsequently, plaintiff was diagnosed with severe carpal tunnel syndrome and ulnar neuropathy involving her right arm and wrist.
9. On 18 May 1995, orthopaedist Dr. Michael King, performed carpal tunnel surgery on plaintiff. In Dr. King's opinion, plaintiff's condition was not related to or caused by her position as a meter reader with defendant.
10. Dr. Howard Jones, an expert in occupational medicine, reviewed plaintiff's medical history, the job site analysis, and the demonstration of the job of meter reading. Based on this review, he formulated the opinion that plaintiff's carpal tunnel syndrome did not result from her activities as a meter reader. His opinion was that plaintiff was not exposed as a meter reader to repetitive movement sufficient to causally connect her injury to her employment.
11. On 13 May 1996. Family practitioner Dr. James S. Campbell, examined plaintiff pursuant to plaintiff's application for social security disability. According to Dr. Campbell, plaintiff's condition could have arisen from her employment, or it could have arisen from other reasons. Upon examination by plaintiff's counsel, Dr. Campbell refused to give an opinion as to a reasonable degree of medical certainty that plaintiff's employment caused her condition. Moreover, when Dr. Campbell saw plaintiff on 13 May 1996, plaintiff no longer had symptoms of carpal tunnel syndrome.
12. Dr. Meyer, a neurologist, and Dr. Browning, a family practitioner, both saw plaintiff for the first time in February and July, 1995 respectively. Both physicians admitted in their depositions that they based their conclusions regarding causation on information solely provided to them by plaintiff. Neither knew of the number of meters plaintiff read each day, or for how long her employment had included actually reading meters. Further, each admitted that they were under the impression that plaintiff had no prior complaints consistent with carpal tunnel syndrome. Due to the limitations of the information which formed the bases for the opinions of Drs. Browning and Meyer, their opinions are accorded lesser weight than those of Drs. Campbell, Jones and King.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to establish by the greater weight of the competent evidence of record that there is a causal connection between her carpal tunnel syndrome symptoms and her employment with defendant. N.C. Gen. Stat. § 97-53(13).
***********
Based upon the foregoing, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim under the law must be, and is hereby DENIED.
2. Each side shall pay its own costs, except the defendants shall pay expert witness fees in the amount of $300.00 each to Dr. Michael E. King, Dr. James Campbell, and Dr. Howard Jones.
This the ___ day of June, 1999.
S/_____________ DIANNE C. SELLERS COMMISSIONER CONCURRING:
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
DSC:jbd